UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

| | |
|---|---|
| M & N FOOD SERVICE, LLC d/b/a MILLONZI FINE CATERING, Plaintiff, | )<br>)<br>)<br>) |
| v. | ) No. 21-cv-206-JJM-LDA |
| TWIN CITY FIRE INSURANCE COMPANY, Defendant. | )<br>)<br>)<br>)<br>) |

**ORDER**

Before this Court is Defendant Twin City Fire Insurance Company's Motion to Dismiss. Twin City claims that any losses incurred by Plaintiff M & N Food Service, LLC do not fit within the specified causes of loss. *See* ECF No. 20. M & N responds by claiming that losses brought on from COVID-19 present the exact scenario that was intended to be covered by the policy. *See* ECF No. 24.

**I.   BACKGROUND**

The COVID-19 pandemic has been a global tragedy. The State of Rhode Island began to take precautionary measures against COVID-19 in early March 2020, with Governor Gina M. Raimondo's Executive Order 20-04. This order stated that "[a]ny restaurant, bar or establishment that offers food or drink shall not permit on-premises consumption of food or drink" unless they complied with "social distancing protocols and guidance" from the Rhode Island Department of Health. ECF No. 20-2 at 3. This order was effectively amended two weeks later. In Executive Order 20-14,

the governor ordered Rhode Island residents to stay at home and precluded gatherings of more than five people in public places. *See* ECF No. 20-4 at 3.

Rhode Island began its multi-phase reopening process two months later. Under Phase I, the governor lifted the stay-at-home order, but still precluded public gatherings of more than five people. *See* ECF No 20-5 at 4–5. Phase II partially reopened restaurants but created specific guidelines governing them. For example, the governor allowed for restaurants to "begin limited indoor dining, in addition to outdoor dining (subject to applicable municipal approval)." ECF No. 20-6 at ¶ 12. Phase III further reopened the dining capacity of restaurants, from 50% in Phase II to 66% in Phase III. ECF 20-7 at ¶ 19.

Prior to the pandemic, Plaintiff operated a catering business and restaurant, known as Millonzi Fine Catering. The catering business has hosted banquets and private parties. As a result of the COVID-19 pandemic and reopening process by the State of Rhode Island, M & N claims to have lost business opportunities and the potential for revenue generation. *See* ECF No. 19 at ¶ 17. More particularly, they claim that a positive COVID test by one employee forced all others to quarantine thereby freezing business operations, and that the exigencies created by the COVID-19 pandemic forced a "restoration" of their business. *Id.* at ¶ 13, 16. These losses, they claim, should be covered by their insurance policy.

The pertinent provisions of the insurance policy itself are derived from the Special Property Coverage Form. ECF 20-1 at 37–61. The policy covers "direct physical loss of or physical damage to Covered Property . . . caused by or resulting

from a Covered Cause of Loss." *Id.* at 37. There are two forms of covered property: buildings, such as permanently installed fixtures, and business personal property, such as tools and equipment owned by employees. *Id.* at 37. Further, the policy enumerates specified[1] causes of loss as: "Fire; lightening; explosion, windstorm or hail; smoke; aircraft or vehicles; riot or civil commotion; vandalism; leakage from the fire extinguishing equipment; sinkhole collapse; volcanic action; falling objects; weight of snow, ice or sleet; water damage." *Id.* at 61. Causes of loss are further limited by the explicit limitations and exclusions specified in the policy. *Id.* at 38.

The crux of the Special Property Coverage Form of the policy are the aforementioned Covered Causes of Loss. For example, the policy will cover losses to business income, but only if they are "caused by or result[] from a covered loss." *Id.* at 46; *see also id.* at 47 (describing extended business income). The same is true of the policy's Civil Authority provision. This provision pertains to government action that precludes access to one's business as "the direct result of a Covered Cause of Loss." *Id.* at 47.

## II. STANDARD OF REVIEW

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550

---

[1] Though at certain times the policy refers to losses as covered causes of loss, the policy specifically denotes them as specified causes of loss. There is no indication from the policy that there is a substantive difference, nor do the parties allege there to be one. Thus, this Court relies on the "specified" causes of loss enumerated in the Special Property Coverage Form. *See* ECF No. 20-1 at 61.

3

U.S. 544, 570 (2007)). Thus, "a complaint must provide 'a short and plain statement of the claim showing that the pleader is entitled to relief.'" *García-Catalán v. United States*, 734 F.3d 100, 102 (1st Cir. 2013) (quoting Fed. R. Civ. P. 8(a)(2)). At this stage, "the plaintiff need not demonstrate that she is likely to prevail, but her claim must suggest 'more than a sheer possibility that a defendant has acted unlawfully.'" *Id.* at 102–03 (quoting *Iqbal*, 556 U.S. 662, 678 (2009)).

The two-step plausibility inquiry is set forth by the First Circuit in *García-Catalán*.

> First, the court must distinguish the complaint's factual allegations (which must be accepted as true) from its conclusory legal allegations (which need not be credited). Second, the court must determine whether the factual allegations are sufficient to support the reasonable inference that the defendant is liable for the misconduct alleged.

*Id.* at 103 (internal quotation marks omitted) (citations omitted). The "[f]actual allegations must be enough to raise a right to relief above the speculative level, on the assumption that all the allegations in the complaint are true (even if doubtful in fact). *Twombly*, 550 U.S. at 558.

### III.  DISCUSSION

The basic principles of contract law govern Plaintiffs' claims. "A contract is an agreement which creates an obligation. Its essentials are competent parties, subject matter, a legal consideration, mutuality of agreement, and mutuality of obligation." *Lamoureux v. Burrillville Racing Ass'n*, 161 A.2d 213, 215 (R.I. 1960) (internal quotation marks omitted). If a party does not fulfill their contractual obligations,

4

they have breached the contract, and the nonbreaching party may sue for the breach. *See Rendine v. Catoia*, 158 A. 712, 713 (R.I. 1932).

When a court "interpret[s] the contested terms of [an] insurance policy, [they] are bound by the rules established for the construction of contracts generally." *Malo v. Aetna Casualty and Sur. Co.*, 459 A.2d 954, 956 (R.I. 1983). In this sense, to determine whether there has been a breach, this Court must look to the contractual obligations, which are reflected by the plain language of the agreement. *See Zarrella v. Minnesota Mut. Life Ins. Co.*, 824 A.2d 1249, 1259 (R.I. 2003). "If the terms are found to be unambiguous, however, the task of judicial construction is at an end and the parties are bound by the plain and ordinary meaning of the terms of the contract." *Id.*

M & N Food Service's claim begins and ends with the question of whether there was coverage for their claimed losses due to COVID.[2] Losses covered by the insurance policy include "direct physical loss of or physical damage . . . caused by or resulting from a Covered Cause of Loss."[3] ECF No. 20-1 at 37. Therefore, the losses that M &

---

[2] The Court need not address the exclusions and limitations of the policy if there was no coverage. However, if the Court were to address them, the Court would find that the Fungi, Bacteria and Virus exclusion is not applicable. This exclusion relates to property damage, and it specifically states that it modifies the Special Property Coverage Form. *See* ECF No. 20-1 at 138. COVID-19 does not cause damage to property: it operates in the respiratory system of a human host. *See Basics of COVID-19*, CDC, https://www.cdc.gov/coronavirus/2019-ncov/your-health/about-covid-19/basics-covid-19.html (last accessed Mar. 31, 2022).

[3] This Court omits the policy's explicit indication that it only pertains to "Covered Property." ECF No. 20-1 at 37. Because there seems to be little dispute over whether the property would be covered, this Court focuses on whether the losses described by M & N fit into a covered cause of loss.

N alleges must fit into a specified cause of loss. *See supra* Section I. Indeed, regardless of whether the loss was business income or due to civil authority, it must be "caused by or result[] from a covered loss." *See* ECF No 20-1 at 46, 47.

On its face, it does not appear that losses due to COVID-19 would fit into one of these causes of loss. Yet, M & N attempts to define their losses due to COVID as resulting from civil commotion. This argument fails for two reasons.

First, this Court looks to the dictionary definition of civil commotion. A civil commotion is commonly defined as: "a violent situation in which many people in a public place cause serious damage . . . ." *Civil Commotion, Cambridge Dictionary*, https://dictionary.cambridge.org/dictionary/english/civil-commotion (last visited Mar. 31, 2022). The COVID damages alleged by M & N does not fall within this definition.

Secondly, in applying another interpretative mechanism, this Court reaches the same conclusion. The doctrine of *noscitur a sociius* requires a Court to interpret a general term to be more akin to a specifically enumerated term. *See Graham Cty. Soil & Water Conservation Dist. v. United States* ex rel. *Wilson*, 559 U.S. 280, 287 (2010). In this sense, civil commotion must be interpreted substantively similarly to a riot, since that is "the company it keeps." *Ibid.* And yet, COVID-19 produced a situation that stands in stark contrast to a riot. As a result, M & N's arguments fail to fall within the definition of a specified covered loss.

Before concluding, it is worth briefly discussing M & N's arguments pertaining to business income and civil authority. For coverage to apply to loss of business income, that loss must be "caused or resulting from a Covered Cause of Loss." ECF

No. 20-1 at 46. But as has become clear at this point, COVID-19 does not constitute a specified cause of loss. The same rationale applies to the civil authority provision. While it is true that the governor issued executive orders that substantially affected M & N's business, M & N was not prohibited from accessing their property as a result of specifically covered loss. *See id.* at 47. Thus, because any losses incurred by M & N do not pertain to a specified cause of loss, they have no claim. Their complaint must be dismissed.

## IV. CONCLUSION

The plain language of the insurance contract establishes that losses because of COVID-19 are not covered by M & N's insurance policy. As a result, the Court GRANTS Defendant Twin City Fire Insurance Company's Motion to Dismiss. ECF No. 20.

IT IS SO ORDERED.

_____
John J. McConnell, Jr.
Chief United States District Judge

April 18, 2022